Opinion
SPARKS, J.*
In this case we consider whether the funds budgeted for the Legislative Counsel Bureau must be included in the budget of the Legislature for purposes of constitutional spending limitations. We hold that those funds need not be included in the Legislature’s budget.
At issue here is article IV, section 7.5, of the California Constitution, enacted as part of Proposition 140 (the term limit initiative) at the November 6, 1990, General Election. In relevant part that section provides: “In the fiscal year immediately following the adoption of this Act, the total aggregate expenditures of the Legislature for the compensation of members and employees of, and the operating expenses and equipment for, the Legislature may not exceed an amount equal to nine hundred fifty thousand dollars ($950,000) per member for that fiscal year or 80 percent of the amount of money expended for those purposes in the preceding fiscal year, whichever is less.” In subsequent years, the total aggregate expenditures of the Legislature may not exceed that of the preceding fiscal year, adjusted and compounded “by an amount equal to the percentage increase in the appropriations limit for the State established pursuant to Article XIII B.” (Cal. Const., art. IV, § 7.5.)
*1212 Plaintiff Peter F. Schabarum brought this action as a taxpayer, alleging that the Legislature has failed, and will continue failing, to comply with this provision. Leaving aside the hyperbole, plaintiff's claim is that in the state budget act, the budget for the Legislative Counsel Bureau (Legislative Counsel), including sums budgeted for the “Legislative Data Center” (Center), which is housed within and included in the budget of the Legislative Counsel, must be included in the Legislature’s spending cap.[1]
The Legislature filed a cross-complaint for declaratory relief.[2] Again bereft of hyperbole, it asserts: (1) in view of positions taken and factual assumptions accepted in prior litigation (Legislature v. Eu (1991) 54 Cal.3d 492 [286 Cal.Rptr. 283, 816 P.2d 1309]), the plaintiff and his privies are estopped from contending that the Legislative Counsel must be included in the Legislature’s spending cap; (2) since the decision in Legislature v. Eu was rendered, the spending cap has proven so onerous in practice that Proposition 140 must be determined to be an invalid constitutional revision rather than a valid amendment; and (3) the position of the Legislature as a coequal branch of government has been so compromised that the federal Constitution’s guarantee of a republican form of government is violated by Proposition 140.
During discovery, and while various discovery disputes were unresolved, the defendants moved for judgment on the pleadings. The trial court granted *1213 judgment against plaintiff on the ground that the case presented a nonjusticiable political issue. The cross-complaint was dismissed as moot. Plaintiff appeals and the Legislature has filed a protective cross-appeal.[3]
I
Political Question
The “political question” rule has two general applications or effects, one that is broad and commonly applied but rarely articulated as such, and one that is narrow but rarely applicable. Essentially the “political question” rule relates to the appropriate role of the judiciary in a tripartite system of government. Courts perform the judicial function, that is, they resolve cases and controversies before them and, in the process, interpret and apply the laws. (Massachusetts v. Mellon (1923) 262 U.S. 447, 488 [43 S.Ct. 597, 601, 67 L.Ed. 1078, 1085].) In doing so the courts may not usurp the governmental functions of the legislative and executive branches, and usurpation includes unwarranted intrusion into the roles of those branches. Thus it has been said: “The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the [legislative and executive branches].” (Japan Whaling Assn. v. American Cetacean Soc. (1986) 478 U.S. 221, 230 [106 S.Ct. 2860, 2866, 92 L.Ed.2d 166, 178].)
Nevertheless, it is well established that it is a judicial function to interpret the law, including the Constitution, and, when appropriately presented in a case or controversy, to declare when an act of the Legislature or the executive is beyond the constitutional authority vested in those branches. (INS v. Chadha (1983) 462 U.S. 919, 941-942 [103 S.Ct. 2764, 2779-2780, 77 L.Ed.2d 317, 338-339]; California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 869.)
In its broad sense the political question concept is an almost constant restraint on the manner in which the courts perform the judicial function. It is the policy behind such frequently identified and applied judicial standards as: the primacy of legislative intent in statutory interpretation (see Cossack v. City of Los Angeles (1974) 11 Cal.3d 726, 732-733 [114 Cal.Rptr. 460, 523 P.2d 260]; California Sch. Employees Assn. v. Jefferson Elementary Sch. Dist. (1975) 45 Cal.App.3d 683, 691 [119 Cal.Rptr. 668]); the presumption *1214 of constitutionality that is accorded legislation (see Horeczko v. State Bd. of Registration (1991) 232 Cal.App.3d 1352, 1358 [284 Cal.Rptr. 149]); the refusal to judge the wisdom of legislation (see Ferguson v. Skrupa (1963) 372 U.S. 726, 730 [83 S.Ct. 1028, 1031, 10 L.Ed.2d 93, 97, 95 A.L.R.2d 1347]; California Teachers Assn. v. Hayes (1992) 5 Cal.App.4th 1513, 1529 [7 Cal.Rptr.2d 699]; Doyle v. Board of Barber Examiners (1963) 219 Cal.App.2d 504, 515 [33 Cal.Rptr. 349]) or the motives of the legislators (see Daniel v. Family Ins. Co. (1949) 336 U.S. 220, 224 [69 S.Ct. 550, 552-553, 93 L.Ed. 632, 636, 10 A.L.R.2d 945]; California Teachers Assn. v. Hayes, supra, 5 Cal.App.4th at p. 1529); and the refusal to employ judicial remedies to compel the exercise of discretion in a particular manner (see State of South Dakota v. Brown (1978) 20 Cal.3d 765, 780 [144 Cal.Rptr. 758, 576 P.2d 473]; Lindell Co. v. Board of Permit Appeals (1943) 23 Cal.2d 303, 315 [144 P.2d 4]). Although seldom specifically attributed to the political question issue, these and other rules for judicial decisionmaking have the same basis as the political question rule in its narrow sense, that is, the deference the courts must give other branches of government operating within their spheres of authority.
In its narrow sense the political question rule relates to the dismissal of lawsuits without reaching the merits of the dispute. The rule compels dismissal of a lawsuit when complete deference to the role of the legislative or executive branch is required and there is nothing upon which a court can adjudicate without impermissibly intruding upon the authority of another branch of government. This is usually expressed with such phrases as ‘“a textually demonstrable constitutional commitment of the issue to a coordinate political department’ ” and “ ‘the impossibility of a court’s undertaking independent resolution without expressing lack of respect due coordinate branches of government. . . .’” (California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 869; see generally, Tribe, American Constitutional Law (2d ed. 1988) Federal Judicial Power, §§ 3-13, pp. 96-107.) But it is actually just an extreme application of the rules of constitutional adjudication that the courts apply on a regular basis.
In this case plaintiff contends that an aspect of the state budget act, adopted by the Legislature and signed by the Governor, violates a constitutional limitation on legislative spending. The enactment of a budget bill is a legislative function; it is both a right and a duty that is expressly placed upon the Legislature and the Governor by our state Constitution. (Cal. Const., art. IV, § 12.) This fact calls into play the political question rule in its broad sense because it requires that we resolve the merits of the constitutional challenge to the budgetary legislation. This in turn requires that we apply the *1215 usual rules of judicial review that accord appropriate deference to the legislative and executive exercise of political prerogatives. However, deference does not mean complete forbearance. “[A] challenge to the constitutionality of an act is inherently a judicial rather than political question and neither the Legislature, the executive, nor both acting in concert can validate an unconstitutional act or deprive the courts of jurisdiction to decide questions of constitutionality.” (California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 869.) Because this lawsuit seeks an adjudication of the constitutionality of the state budget act, a judicial function which does not usurp the functions of the two other coordinate branches, the constitutional question was justiciable.
The Legislature retorts that the trial court was led to conclude that this case presents a nonjusticiable political question by plaintiff’s “extraordinarily intrusive efforts at discovery of the operation and motivations of the Legislature . . . .” From the disputed discovery requests in the record it would appear that plaintiff was under the misconception that through the mechanism of this lawsuit he could obtain a complete and detailed audit of the Legislature, and a thorough inquiry into legislative motivations. He was mistaken. The general rules of constitutional adjudication, some of which we have mentioned above, narrowly circumscribe the issue that is actually justiciable. Within the context of these rules, the remedy for plaintiff’s misperceived scope of the litigation is not to dismiss the litigation in its entirety without considering the merits of the constitutional challenge, but rather it is to limit discovery and trial to the appropriate scope of the justiciable issue.[4]
For these reasons we conclude that the political question rule does not compel judgment against plaintiff without consideration of the precise constitutional issue presented. The court was not in error in recognizing the potential for unwarranted judicial intrusion into the governmental roles of the Legislature and of the Governor. However, that potential must be addressed by application of the usual rules of adjudication to limit the scope of the judicial inquiry. Properly limited, the constitutional question is justiciable.
*1216 II
Right for the Wrong Reason Doctrine
Our conclusion that the political question rule does not render the issue presented entirely nonjusticiable does not end our inquiry. It is established that on appeal we review the decision of the trial court rather than its reasoning, and thus . .a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion.” (Belair v. Riverside County Flood Control Dist. (1988) 47 Cal.3d 550, 568 [253 Cal.Rptr. 693, 764 P.2d 1070]. See also Tippett v. Terich (1995) 37 Cal.App.4th 1517, 1539 [44 Cal.Rptr.2d 862]; Ladas v. California State Auto. Assn. (1993) 19 Cal.App.4th 761, 769 [23 Cal.Rptr.2d 810].)
Here the trial court granted, although for the wrong reason, defendants’ motion for judgment on the pleadings. Judgment on the pleadings may be granted upon the motion of either party or by the court on its own motion. (Code Civ. Proc., § 438, subd. (b)(1), (2).) The standard for granting a motion for judgment on the pleadings is essentially the same as that applicable to a general demurrer, that is, under the state of the pleadings, together with matters that may be judicially noticed, it appears that a party is entitled to judgment as a matter of law. (Code Civ. Proc., § 438, subd. (d); Smiley v. Citibank (1995) 11 Cal.4th 138, 146 [44 Cal.Rptr.2d 441, 900 P.2d 690] .)[5]
Judgment on the pleadings does not depend upon a resolution of questions of witness credibility or evidentiary conflicts. In fact, judgment on the pleadings must be denied where there are material factual issues that require evidentiary resolxition. (Bach v. McNelis (1989) 207 Cal.App.3d 852, 865-866 [255 Cal.Rptr. 232].) In determining whether the pleadings, together with matters that may be judicially noticed, entitle a party to judgment, a reviewing court can itself conduct the appropriate analysis and need not defer to the trial court. (Smiley v. Citibank, supra, 11 Cal.4th at p. 146.) Accordingly, we will proceed to consider whether, on the merits of plaintiff’s complaint, judgment on the pleadings would have been proper on the *1217 appropriately narrowed justiciable issue presented. If so, then we should uphold the trial court’s dismissal of the action even though it granted the motion for judgment on the pleadings for the wrong reason.
III
Scope of Judicial Review
Before addressing the substantive question presented, we must determine the appropriate scope of judicial consideration of challenges to aspects of the state budget act. We have already noted, in parts I and II, that the justiciable issue is a limited one. Certain principles bear emphasis here. “ ‘Unlike the federal Constitution, which is a grant of power to Congress, the California Constitution is a limitation or restriction on the powers of the Legislature. [Citations.] Two important consequences flow from this fact. First, the entire law-making authority of the state, except the people’s right of initiative and referendum, is vested in the Legislature, and that body may exercise any and all legislative powers which are not expressly, or by necessary implication, denied to it by the Constitution. [Citations.] . . . [c|[] Secondly, all intendments favor the exercise of the Legislature’s plenary authority: “If there is any doubt as to the Legislature’s power to act in any given case, the doubt should be resolved in favor of the Legislature’s action. Such restrictions and limitations [imposed by the Constitution] are to be construed strictly, and are not to be extended to include matters not covered by the language used.” [Citations.]”’ (Pacific Legal Foundation v. Brown (1981) 29 Cal.3d 168, 180 [172 Cal.Rptr. 487, 624 P.2d 1215] [italics in original], citing Methodist Hosp. of Sacramento v. Saylor (1971) 5 Cal.3d 685, 691 [97 Cal.Rptr. 1, 488 P.2d 161]. See also California Teachers Assn. v. Hayes, supra, 5 Cal.App.4th at pp. 1531-1532.)
The principle that restrictions on the authority of the Legislature are to be strictly construed is one of long-standing declaration. (See Dean v. Kuchel (1951) 37 Cal.2d 97, 100 [230 P.2d 811]; Collins v. Riley (1944) 24 Cal.2d 912, 916 [152 P.2d 169]; Smith v. Judge of the Twelfth District (1861) 17 Cal. 547, 552.) As early as 1861 our Supreme Court declared: “It is also unquestionable that the mass of powers of government is vested in the representatives of the people, and that these representatives are no further restrained under our system than by the express language of the instrument imposing the restraint, or by particular provisions which, by clear intendment, have that effect.” (Smith v. Judge of the Twelfth District, supra, 17 Cal. at p. 552.)
The principle of strict construction arises from the very nature of California’s tripartite form of government. Thus, subject to the reserved *1218 powers of initiative and referendum, “[t]he legislative power of this State is vested in the California Legislature . . . (Cal. Const., art IV, § 1.) The people, in their Constitution, may place restrictions upon the exercise of the legislative power by the Legislature but the courts may not do so without violating the fundamental separation of powers doctrine. Judicial application of clear and unequivocal constitutional restrictions on the Legislature’s authority merely enforces the people’s exercise of the right to place restrictions upon the Legislature. On the other hand, legislative restraint imposed through judicial interpretation of less than unequivocal language would inevitably lead to inappropriate judicial interference with the prerogatives of a coordinate branch of government. Accordingly, the only judicial standard commensurate with the separation of powers doctrine is one of strict construction to ensure that restrictions on the Legislature are in fact imposed by the people rather than by the courts in the guise of interpretation.[6]
The principle of strict construction does not mean, as the Legislature asserts, that the judicial inquiry is reduced to superficiality. As the Legislature would have it, the courts may only look at the budget line items for the Senate and for the Assembly to determine whether they numerically exceed the Legislature’s spending limitation. Under such a shallow scope of judicial review the Legislature could defeat the constitutional limitation through the simple artifice of shifting its operational expenses into the budget of some existing or newly created agency. But the judicial role is not so confined. The courts have the responsibility for determining the constitutionality of acts of the Legislature, and in doing so to give effect to the will of the electorate which is, of course, paramount. (Hoogasian Flowers, Inc. v. State Bd. of Equalization (1994) 23 Cal.App.4th 1264, 1277-1278 [28 Cal.Rptr.2d 686] .)[7] Accordingly, while adhering to the principle of strict construction, we shall look to substance as well as form in resolving constitutional challenges to acts of the Legislature.
*1219 The principle that all intendments favor the propriety of the Legislature’s exercise of its authority, that is, the presumption of constitutionality accorded legislative acts, also arises from the separation of powers doctrine. The legislative role necessitates that policy decisions be made. In fact it could be said that policymaking is the legislative function. (California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 870.) Respect for the Legislature’s constitutional role demands that the courts refuse to judge the wisdom of legislation or the motives of the legislators. (California Teachers Assn. v. Hayes, supra, 5 Cal.App.4th at p. 1529.)
The performance of the policymaking role of the Legislature necessitates that the Legislature engage in certain factfinding processes. These are not the type of case-specific factual determinations that are intrinsic to the judicial function, but are instead “an indispensable incident and auxiliary to the proper exercise of legislative power.” (In re Battelle (1929) 207 Cal. 227, 241 [277 P. 725, 65 A.L.R. 1497].) “It is not the judiciary’s function, however, to reweigh the ‘legislative facts’ underlying a legislative enactment.” (American Bank & Trust Co. v. Community Hospital (1984) 36 Cal.3d 359, 372 [204 Cal.Rptr. 671, 683 P.2d 670, 41 A.L.R.4th 233].) The factual determinations necessary to the performance of the legislative function are of a peculiarly legislative character and a scope of review firmly rooted in that consideration is required. (See Dawson v. Town of Los Altos Hills (1976) 16 Cal.3d 676, 685 [129 Cal.Rptr. 97, 547 P.2d 1377].) Thus, it has been said that “[i]f the validity of a statute depends on the existence of a certain state of facts, it will be presumed that the Legislature has investigated and ascertained the existence of that state of facts before passing the law.” (City of Ojai v. Chaffee (1943) 60 Cal.App.2d 54, 61 [140 P.2d 116].) Moreover, the presumption of constitutionality requires that a legislative act “be deemed to have been enacted on the basis of any state of facts supporting it that reasonably can be conceived.” (Higgins v. City of Santa Monica (1964) 62 Cal.2d 24, 30 [41 Cal.Rptr. 9, 396 P.2d 41].) And, “[t]he power to determine the facts upon which appropriations are based rests exclusively in the legislative and executive branches of the government, and the function of the courts is to determine the issues of law presented by the face of the legislation and relevant facts of which they can take judicial notice.” (Dittus v. Cranston (1959) 53 Cal.2d 284, 286 [1 Cal.Rptr. 327, 347 P.2d 671].)
What all this means is that the courts will not, as suggested by plaintiff, engage in a trial at which the court, as trier of fact, determines the factual basis upon which the Legislature may act. “While the courts have *1220 undoubted power to declare a statute invalid, when it appears to them in the course of judicial action to be in conflict with the constitution, yet they can only do so when the question arises as pure question of law, unmixed with matters of fact the existence of which must be determined upon a trial, and as the result of it, may be, conflicting evidence. When the right to enact a law depends upon the existence of facts, it is the duty of the legislature, before passing the bill, and of the governor before approving it, to become satisfied in some appropriate way that the facts exist, and no authority is conferred upon the courts to hear evidence, and determine, as a question of fact, whether these co-ordinate departments of the state government have properly discharged such duty. The authority and duty to ascertain the facts which ought to control legislative action are, from the necessity of the case, devolved by the constitution upon those to whom it has given the power to legislate, and their decision that the facts exist is conclusive upon the courts, in the absence of an explicit provision in the constitution giving the judiciary the right to review such action. We therefore hold, that in passing upon the constitutionality of a statute, the court must confine itself to a consideration of those matters which appear on the face of the law, and those facts of which it can take judicial notice. If the law, when thus considered, does not appear to be unconstitutional, the court will not go behind it, and, by a resort to evidence, undertake to ascertain whether the legislature, in its enactment, observed the restrictions which the constitution imposed upon it as a duty to do, and to the performance of which its members were bound by their oaths of office.” (Stevenson v. Colgan (1891) 91 Cal. 649, 652-653 [27 P. 1089].) In other words, in enacting legislation the Legislature has already, in the exercise of the legislative power, determined the facts necessary to support the legislation. The courts cannot revisit the issue as a question of fact, but must defer to the Legislature’s determination unless it is palpably arbitrary. (Richfield Oil Corp. v. Franchise Tax Bd. (1959) 169 Cal.App.2d 331, 335 [337 P.2d 237].) Consequently, we must uphold the challenged legislation so long as the Legislature could rationally have determined a set of facts that support it. (American Bank & Trust Co. v. Community Hospital, supra, 36 Cal.3d at p. 374.)
These standards of judicial review are particularly appropriate in this case for two reasons. First, we are concerned here with a challenge to an aspect of the state budget act. As we have noted, the enactment of a budget bill is expressly committed by our state Constitution to the Legislature and the Governor, that is, there is a “ ‘textually demonstrable constitutional commitment of the issue to a coordinate political department . . . .’” (California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 869; Cal. Const., art. IV, § 12.) But the budget bill could not, and did not purport to, commit the ultimate issue of constitutionality of an expenditure to other branches of government rather than the *1221 judiciary. Accordingly, we have determined that neither the trial court nor this reviewing court is precluded from determining the merits of the ultimate constitutional question. However, the Constitution does confer upon other branches of government the authority, and the duty, to make the initial factual and legal determinations necessary to enact a budget bill and the commitment of those matters to other branches of government in the first instance demands judicial deference and restraint.[8] (See Dittus v. Cranston, supra, 53 Cal.2d at p. 286.)
Second, the decisions of our state Supreme Court “establish that the presumption of constitutionality accorded to legislative acts is particularly appropriate when the Legislature has enacted a statute with the relevant constitutional prescriptions clearly in mind. [Citation.] In such a case, the statute represents a considered legislative judgment as to the appropriate reach of the constitutional provision. Although the ultimate constitutional interpretation must rest, of course, with the judiciary [citation], a focused legislative judgment on the question enjoys significant weight and deference by the courts.” (Pacific Legal Foundation v. Brown, supra, 29 Cal.3d at p. 180.)
IV
Validity of Budget for Legislative Counsel
We turn then to the merits of the plaintiff’s challenge. The justiciable issue presented here is the constitutionality of the determination of the Legislature and of the Governor that the budget for the Legislative Counsel may be excluded from “the operating expenses and equipment for” the Legislature within the meaning of article IV, section 7.5, of our state Constitution.
*1222 The term “operating expenses” is not one of clear and universal definition. It is a term which is used in a variety of contexts, including public utility rate regulation, tax codes, governmental loan programs, commercial leases and other business contracts, as well as for internal accounting and managerial purposes. (See generally, 29A Words and Phrases (1972) pp. 427-432; id. (1997 supp.) pp. 114-116.) Whether a particular item may be included or excluded from “operating expenses” necessarily depends upon the purpose and context in which the phrase is used. (See Powell v. City & County of S. F. (1944) 62 Cal.App.2d 291, 299 [144 P.2d 617]. See also Mandel v. Myers (1981) 29 Cal.3d 531, 542-545 [174 Cal.Rptr. 841, 629 P.2d 935]; Pub. Util. Code, § 99247.)
Although the term “operating expenses” is inherently imprecise, it appears to be used universally in a limiting manner. In short, operating expenses are something less than any and all expenses that may be attributed to an activity, business, or entity. (See 29A Words and Phrases, supra, pp. 427-432; 64 Am.Jur.2d Public Utilities, § 173, pp. 691-692; Ballantine’s Law Dict. (3d ed. 1969) p. 892; Black’s Law Diet. (6th ed. 1990) p. 1091, col. 2.) The term usually refers to expenses that have something of an immediate connection to the conduct of the ongoing or day-to-day activities of a business or entity. (Ibid.)
It is also noteworthy that the constitutional spending limitation restricts expenditures for “the Legislature.” The Legislature is an entity that “consists of the Senate and Assembly.” (Cal. Const., art. IV, § 1.) Constitutional references to “the Legislature” do not necessarily or automatically encompass all participants in the lawmaking function of the state. (Brooks v. Fischer (1889) 79 Cal. 173, 176-177 [21 P. 652].) For example, in the cited case it was held that although the Governor is included in the lawmaking power, the Governor is not thereby a part of “the Legislature” within the meaning of a constitutional provision.[9] When read with the term “operating expenses,” it appears that the restriction upon expenditures of “the Legislature” is applicable to expenditures that have some immediate connection to the actual operation of the Senate and/or Assembly as entities. The constitutional provision does not sweep within its limitations everything that may serve a legislative purpose, aid or assist the Legislature, or be said to have a legislative character in some respect.
*1223 In state government there are a multitude of activities required of governmental departments or agencies that aid or assist the Legislature, serve a legislative purpose, or have a legislative character. In our modem, complex government it has become increasingly imperative that many functions be conducted through administrative agencies. (East Bay M. U. Dist. v. Dept. of P. Wks. (1934) 1 Cal.2d 476, 478-479 [35 P.2d 1027].) Administrative agencies are part of the executive branch, but often have delegated to them limited judicial and legislative functions, usually described with the modifier “quasi.” (California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 870.) The scope of an agency’s quasi-legislative authority has to be defined and limited by the Legislature, and the creation of such a power is a delegation of legislative authority, the exercise of which is legislative in character. (Ibid.) In many instances the Legislature utilizes state agencies to accomplish what are unquestionably responsibilities of the Legislature. For example, the power of appropriation, that is, to spend money, resides exclusively in the Legislature. (Tirapelle v. Davis (1993) 20 Cal.App.4th 1317, 1321 [26 Cal.Rptr.2d 666].) However, the Legislature accomplishes its task by enacting a budget and relying on other agencies, particularly the Department of Finance, to supervise the state’s fiscal affairs. (Ibid.) The matter of setting employee compensation is a legislative function that the Legislature accomplishes through a delegation of authority to the Department of Personnel Administration. (Id. at pp. 1322-1323, fn. 8.)
In addition to the delegation of legislative authority, state agencies have duties imposed upon them that aid or assist the legislative process. For example, in aid of the Legislature’s exercise of the power of appropriation, every agency is required to prepare and submit a complete and detailed budget which, with the assistance of the Department of Finance, is utilized in the budget bill which must be submitted by the Governor and introduced in both houses of the Legislature. (20 Cal.App.4th at pp. 1321-1322; Cal. Const., art. IV, § 12.) In Government Code section 15901, the Legislature requires the Governor to make an annual report and provide recommendations for measures to enhance economic development. In the State Contract Act the Legislature has established goals for minority, women, and disabled veteran business participation and every awarding department is required to submit an annual report to the Legislature detailing levels of participation, reasons for inability to meet the goals if they are not met, and remedial action to be undertaken. (Pub. Contract Code, § 10115.5.) There are numerous other instances in which the Legislature has required that particular state and local agencies submit periodic reports as the basis for future legislative consideration and/or action. (See Gov. Code, § 10242.5, requiring the Legislative Counsel to prepare and publish a quarterly report that lists all of the *1224 reports that state and local entities are required to prepare and file with the Governor, the Legislature, or both.) And in some instances the Legislature has created limited purpose committees or commissions to address particular issues and whose duties include providing advice and recommendations to the Legislature. (See, e.g., Gov. Code, § 8240 et seq.; Miller v. California Com. on Status of Women (1984) 151 Cal.App.3d 693 [198 Cal.Rptr. 877].)[10]
From these examples it can be seen that while the Legislature is a separate branch of government, the legislative function is accomplished with the before-during-and-after aid and assistance of other governmental agencies and departments. Before legislating the Legislature receives budgets, reports, and advice from various agencies and sources. The Legislature often accomplishes its regulatory function by delegating rulemaking (legislative) authority to administrative agencies. And the Legislature utilizes agencies such as the Department of Finance and the Department of Personnel Administration to supervise and carry out its functions.
It may well be impossible, without risking paralysis in the conduct of public business, to return to a form of government in which all legislative and judicial functions are performed solely and directly by the Legislature and by the courts. (East Bay M. U. Dist. v. Dept. of P. Wks., supra, 1 Cal.2d at pp. 478-479.) But it is certainly too late in the day to return to such a of government without effecting a constitutional revision. (Ibid.) Like Supreme Court in Legislature v. Eu, supra, 54 Cal.3d at pages 506 through 512, we do not discern in Proposition 140 any intent to effect such reaching changes in the nature of our basic governmental plan. (See California Teachers Assn. v. Hayes, supra, 5 Cal.App.4th at p. 1533.) In imposing spending cap on the Legislature, the constitutional provision refers to “operating expenses and equipment for[] the Legislature” (Cal. Const., IV, § 8), which, as we have seen, are terms of limitation that connote some degree of immediacy with respect to the ongoing or day-to-day operation the Legislature as an entity. Accordingly, we conclude that to bring particular expenditure within the spending cap it is not enough to simply assert that the expenditure aids or assists the Legislature, serves a legislative purpose, or is of a legislative character; rather, something of a more immediate connection to the normal operations of the Legislature as an entity must be shown.[11]
The Legislative Counsel is established and governed by Government Code sections 10200 to 10248, and we are required to take judicial notice of those *1225 statutory provisions. (Evid. Code, § 451, subd. (a).) Under the governing law, the Legislative Counsel is in the charge of a chief, who is “a civil executive officer.” (Gov. Code, §§ 1001,10200.) The chief and two deputies are exempt from civil service, but the other members of the Legislative Counsel’s staff are subject to the civil service system of employment. (Cal. Const., art. VII, §§ 1, subd. (a), 4, subd. (m).)[12] They are thus subject to the jurisdiction of the State Personnel Board with respect to the merit aspects of their employment and to the Department of Personnel Administration with respect to the nonmerit aspects of employment. (See Tirapelle v. Davis, supra, 20 Cal.App.4th at pp. 1322-1323, fn. 8.) The chief is selected by concurrent resolution of the Legislature, but it is expressly provided that the person must be chosen without regard to party affiliation and solely upon the ground of fitness to perform the duties of the office. (Gov. Code, §§ 10201, 10203.) It is also provided that “[njeither the Legislative Counsel nor any employee of the bureau shall oppose or urge legislation.” (Gov. Code, § 10210.) With respect to communications, the Legislative Counsel maintains an attorney-client relationship with members of the Legislature for whom it provides service and with the Governor with respect to services provided to the Governor. (Gov. Code, § 10207, subds. (a), (b)(1).) However, the attorney-client relationship is limited to purposes of confidentiality, since the Legislative Counsel can neither urge nor oppose legislation and may not appear in any action or proceeding without prior approval of the Joint Rules Committee, concurrent resolution, or, if the Joint Rules Committee has terminated, approval of the Speaker of the Assembly and the President Pro Tempore of the Senate. (Gov. Code, §§ 10210, 10246.)
The function of the Legislative Counsel is to assist in the preparation, amendment, and consideration of legislative measures upon request or suggestion. (Gov. Code, § 10231.) In this role the Legislative Counsel provides aid and assistance to members of the Legislature (Gov. Code, §§ 10233, 10234), but does not work exclusively for or with the Legislature. The Legislative Counsel is required, upon request, to advise any state agency with respect to the preparation of measures to be submitted to the Legislature. (Gov. Code, § 10232.) In addition, it may provide legal services to the State Auditor. (Gov. Code, § 10232.5.) Upon the Governor’s request, the *1226 Legislative Counsel must give such consideration to, and service concerning, any pending measure as circumstances will permit. (Gov. Code, § 10234.) When a bill is in the Governor’s hands for approval, rejection or other action, the Legislative Counsel must give similar consideration and service concerning the bill as the circumstances permit and the Governor requests. (Gov. Code, § 10235, subd. (a).) The Legislative Counsel may give the Governor an opinion on any question of law and may provide other legal services to the Governor as requested. (Gov. Code, § 10235, subds. (b), (c).) Upon the written suggestion of any judge of the Supreme Court, Courts of Appeal or superior courts, the Legislative Counsel must prepare or assist in the preparation or amendment of a legislative measure and must transmit it to the chairperson of the judiciary committee of each house at the next session. (Gov. Code, §§ 10237, 10241.) Moreover, the Legislative Counsel is required to cooperate with the proponents of an initiative measure in its preparation when requested by 25 or more electors and it appears there is a reasonable probability that the measure will be submitted to the voters. (Gov. Code, § 10243.) The Legislative Counsel may also contract with cities and counties for the codification, compilation, or indexing of ordinances and resolutions. (Gov. Code, § 10244.) And the Legislative Counsel may cooperate with any educational institution of the state in any manner. (Gov. Code, § 10245.)
Under the governing law, the Legislative Counsel has several legal attributes that are significant. First, it is independent of the Legislature. The chief must be selected solely on the basis of ability to do the job and is an executive officer. As with other state agencies, the chief and top deputies are exempt from civil service but other employees are within the civil service merit system of employment and are thus beyond the Legislature’s control with respect to hiring, firing, promotion, demotion and the like. Second, the Legislative Counsel is nonpartisan and nonpolitical. The chief must be selected without regard to party affiliation and neither the chief nor any employee of the Legislative Counsel is permitted to urge or oppose legislation. Third, the duties of the Legislative Counsel are nonexclusive. It is required to provide services to the Governor, any state agency, judges, members of the public, and it may provide services to any state educational institution and to local governments. Thus, in the Legislative Counsel the Legislature created an independent, nonpolitical state agency to develop and exercise, on a nonexclusive and nonadvocative basis, expertise in the preparation and consideration of legislative measures.[13]
As we have noted previously, in determining whether the Legislature and the Governor are required to include the budget of the Legislative Counsel *1227 within the Legislature’s spending cap, we are not permitted to substitute our view of the issue for the decision of those to whom the Constitution commits the issue. Rather, we must presume the constitutionality of the decision of the Legislature and of the Governor and may not interfere with that decision unless it is palpably arbitrary, that is, unless no rational set of facts supports that decision. Moreover, in considering the issue we are required to construe strictly the spending cap and may not sweep within its limitations matters that are not expressly or by necessary intendment included.
When viewed in this light, the provisions of law governing the Legislative Counsel do not compel the conclusion that the decision of the Legislature and of the Governor to exclude the budget of the Legislative Counsel from the Legislature’s spending cap is unconstitutional. As we see it, there are three aspects to plaintiff’s challenge, these being questions of form, of substance, and of apportionment. We turn now to those questions.
The Legislative Counsel is not, in form, a part of the Legislature. Its chief is a civil executive officer who must be appointed on a nonpartisan basis. (Gov. Code, §§ 1001,10200, 10201, 10203.) While the officers and employees of the Legislature are exempt from civil service and may be hired and fired freely by the house to which they are attached (Cal. Const., art. VII, § 4, subd. (a); Gov. Code, §§ 9170-9173), employees of the Legislative Counsel are within the civil service and are under the jurisdiction of the State Personnel Board and the Department of Personnel Administration. (Cal. Const., art. VII, §§ 1, subd. (a), 4, subd. (m); Tirapelle v. Davis, supra, 20 Cal.App.4th at pp. 1322-1323, fn. 8.) While the Legislature is the political branch of government and political debate is at the heart of its function, the Legislative Counsel is strictly forbidden from entering into the political process by urging or opposing legislation. (Gov. Code, § 10210.) And the Legislative Counsel is required or permitted to provide services to virtually any governmental entity within the state as well as to private citizens attempting to instigate the exercise of the power of initiative. Under these circumstances we have no hesitancy in concluding that the Legislative Counsel is, in form, a state agency that is not a part of “the Legislature” within the meaning of the constitutional spending limitations under review.
Plaintiff’s appeal to substance rather than form fares no better. Since the Legislative Counsel is required to obtain and exercise expertise in the preparation, amendment and consideration of the legislative measures (Gov. Code, § 10231), plaintiff would include it within the Legislature for purposes of the Legislature’s spending cap. However, as we have noted, constitutional references to “the Legislature” as an entity are not commensurate *1228 with the lawmaking power and do not necessarily include all persons or entities that participate in the making of laws. (Brooks v. Fischer, supra, 79 Cal. at pp. 176-177.) We find two salient features of the Legislative Counsel to be determinative here. First, it is nonpartisan and nonpolitical, since the chief must be selected without regard to party affiliations and the chief and all employees of it are expressly forbidden to urge or oppose legislation. (Gov. Code, §§ 10203, 10210.) By these provisions the Legislative Counsel is precluded from participating in the policy debate that is the very essence of the legislative function in a representative form of government. Second, the duties of the Legislative Counsel are not exclusive to the Legislature, since the Legislative Counsel is required or permitted to provide services to a wide variety of entities and individuals. Under these circumstances we cannot conclude that the Legislative Counsel is, in substance, a part of the Legislature that must be included in its spending cap.
This brings us to the third aspect of plaintiff’s contention, namely the suggestion that the budget of the Legislative Counsel should be apportioned in some manner and that the Legislature should be charged for the services it receives. The persuasive appeal of such a suggestion is superficial. As we have noted, in the performance of its functions the Legislature receives aid, advice, and assistance from innumerable sources, including virtually all governmental entities and agencies. Such aid, advice or assistance may be volunteered or may be required or requested by law. (See Gov. Code, § 10242.5.) To conclude that the Legislature is required to pay, out of its spending cap, for every report, recommendation, advice, or assistance that it receives would work a wholesale and fundamental modification in the state budget and possibly in state government itself. But we do not perceive, in the constitutional language, any such an expansive intent. The constitutional provision limits expenditures for “operating expenses and equipment” for “the Legislature” which are both terms of restricted rather than expansive meaning. The provision does not, expressly or by necessary implication, provide that the Legislature must pay or be held accountable for any aid, advice, or assistance it receives from any other state agency or entity. In view of its independent, nonpartisan, nonadvocative, and nonexclusive nature, we find insufficient reason to conclude that the Legislative Counsel is constitutionally required to be singled out for disparate treatment.[14]
Plaintiff asserts that unless the Legislative Counsel is included in the Legislature’s spending cap, the Legislature will be able to avoid its spending *1229 cap through subterfuge. This theoretical possibility cannot dictate the outcome of the limited constitutional question presented in this case. When, in the budget act, an appropriation is made for the support of an agency, the funds appropriated may be used for the purposes for which the agency is constituted and not otherwise. (Stanson v. Mott (1976) 17 Cal.3d 206, 213 [130 Cal.Rptr. 697, 551 P.2d 1].) An agency’s expenditure of appropriated funds is under the supervision of the Department of Finance. (Tirapelle v. Davis, supra, 20 Cal.App.4th at p. 1321.) And criminal and civil penalties may attach for the misuse of budgeted funds. (Stanson v. Mott, supra, 17 Cal.3d at pp. 223-227; Tirapelle v. Davis, supra, 20 Cal.App.4th at p. 1321.) Once an appropriation for the support of an agency is made, the Legislature has no power of supervision or direction over its expenditure. (California Radioactive Materials Management Forum v. Department of Health Services, supra, 15 Cal.App.4th at p. 872.) The Legislature can dictate the usage of budgeted funds only through enactment of a statute in accordance with the bicameral and presentment requirements of our Constitution. (Ibid.) And any legislative attempt to influence the actions of an agency through informal promises or agreements would be null and void. (Id. at p. 873.) Thus, any legislative attempt to require a state agency to bear some of the Legislature’s expenses must be accomplished by statute and such a statute may itself be judged against the dictates of the Constitution. A nonstatutory legislative attempt to control the expenditure of funds would be null and void and there are other remedies, including civil and criminal remedies applicable to those who misuse state funds, for redress of such behavior. In this light we will, as we must, judge the constitutionality of the budget item under consideration on the face of the budget item together with matters that may be judicially noticed. (Dittus v. Cranston, supra, 53 Cal.2d at p. 286.) We will not presuppose a hypothetical future problem in order to declare unconstitutional that which would otherwise pass constitutional muster. (California Teachers Assn. v. Hayes, supra, 5 Cal.App.4th at p. 1529.)
*1230 Although plaintiff’s complaint is directed at the entire budget of the Legislative Counsel, and the only relief he seeks is to require the budget for that entity to be included in the Legislature’s spending cap, in one respect he makes a more specific factual allegation. Plaintiff asserts that the Center is housed within and included in the budget for the Legislative Counsel, and that it operates computer systems for the Legislature. The Legislative Counsel replies that the Center provides data processing and computer services to the legislative, executive and judicial branches and provides a wide variety of information-related services to private individuals and entities and to the public at large.
In 1993, the Legislature found and declared “that it is now possible and feasible in this electronic age to more widely distribute legislative information by way of electronic communication in order to better inform the public of the matters pending before the Legislature and its proceedings. The Legislature further finds that it is desirable to make information regarding these matters and proceedings available to the citizens of this state, irrespective of where they reside, in a timely manner and for the least possible cost.” (Stats. 1993, ch. 1235, § 1.) The Legislature enacted Government Code section 10248, which imposes upon the Legislative Counsel the duty to make a wide range of legislative information available in electronic form by means of access by way of the largest nonproprietary, nonprofit, cooperative public computer network. On this basis the Legislative Counsel’s computer operations stand on no different footing than does the Legislative Counsel itself and do not compel the conclusion that the budget for either the Center or the Legislative Counsel must be included in the Legislature’s spending cap.
In this litigation the only relief plaintiff has sought is a determination that the entire budget for the Legislative Counsel must be included in the Legislature’s spending cap under article IV, section 7.5 of the California Constitution. We have determined that, under the appropriate standard of judicial review, plaintiff is wrong and the determination of the Legislature and of the Governor to provide a budget for the Legislative Counsel separate from the budget for the Legislature is not unconstitutional. This determination entitles the defendants to judgment on the pleadings on the sole question presented.[15] Accordingly the dismissal by the trial court, although for the wrong reason, is nevertheless entitled to be upheld.
*1231 Disposition
The judgment is affirmed. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 26(a).)
Scotland, Acting P. J., concurred.

Retired Associate Justice of the Court of Appeal, Third District, assigned by the Chief Justice pursuant to article VI, section 6 of the C¿ifomia Constitution.

 The issue is one of great significance for the Legislature and the Legislative Counsel. According to plaintiff’s complaint, the Legislature’s spending cap for the 1991-1992 fiscal year was $114 million, and for that year the Legislative Counsel’s budget allotment was $53,150,000, nearly 47 percent of the spending cap. For the 1992-1993 fiscal year the spending cap was $116,587,000, and the Legislative Counsel’s budget allotment was $52,914,000, over 45 percent of the spending cap.

 The named defendants are the California Legislature, the Assembly of the State of California, the Senate of the State of California, the Assembly Rules Committee, the Senate Rules Committee, the Joint Rules Committee, and the Legislative Counsel. The named cross-complainants were the Legislature, the Senate and the Assembly. The legislative spending cap at issue here limits the total aggregate expenditures of “the Legislature,” and the Legislature consists of the Senate and the Assembly. (Cal. Const., art. IV, §§ 1, 7.5.) As we explained in California Radioactive Materials Management Forum v. Department of Health Services (1993) 15 Cal.App.4th 841, 872 [19 Cal.Rptr.2d 357], a single house is not the Legislature, and neither one house nor any committee can be delegated the authority of the Legislature. Accordingly, the only necessary legislative defendant is the Legislature itself and we shall refer to the position of the legislative defendants and cross-complainants by reference to the Legislature. The Legislative Counsel is also a named defendant and respondent. Since the legal standing and position of the Legislative Counsel is substantively different from the legislative defendants, we shall refer to the Legislative Counsel individually and will not include it in references to the Legislature.

Although the Legislature questions the correctness of the conclusion that the cross-complaint is moot in view of the judgment, it chooses not to contest dismissal of the cross-complaint if judgment in its favor on the complaint is affirmed. In the event of reversal of the judgment on the complaint, then the Legislature asserts that the dismissal of the cross-complaint must be reversed as well.

For example, while it may be concluded that the Legislature cannot evade a constitutional limitation through subterfuge, the issue must be resolved on the basis of objective proof rather than through inquiry into motivation. (County of Los Angeles v. Superior Court (1975) 13 Cal.3d 721, 729 [119 Cal.Rptr. 631, 532 P.2d 495].) Members of the Legislature cannot be questioned, and conversations, planning sessions, and the like cannot be introduced into evidence and are not the proper subject of discovery requests. (Id. at pp. 729-730.)

Matters which are subject to mandatory judicial notice may be treated as part of the complaint and may be considered without notice to the parties. (Code Civ. Proc., § 438, subd. (d).) Matters which are subject to permissive judicial notice must be specified in the notice of motion, the supporting points and authorities, or as the court otherwise permits. (Code Civ. Proc., § 438, subd. (d).) The matters we will consider here are within the decisional, constitutional, and public statutory laws of this state and are therefore subject to mandatory judicial notice. (Evid. Code, § 451, subd. (a).)

The rule has so long been such an integral part of our system of constitutional adjudication that anyone drafting a proposed constitutional amendment must be presumed to act in light of it. For such a person the rule can be simply stated: To the extent you intend to restrict the Legislature’s exercise of the legislative prerogative, you must do so by clear and unequivocal language; if the issue is subject to doubt you cannot achieve through litigation what could have been but was not clearly expressed in the amendment.

Our recognition in Hoogasian Flowers, Inc., that the will of the electorate is paramount is not inconsistent with the principle of strict construction. In fact, in our opinion in that case we commenced discussion with recognition of the principle of strict construction and the presumption of constitutionality. (23 Cal.App.4th at p. 1270.) But constitutional limitations placed upon the Legislature are enacted by the people and in the interpretation of such limitations it is the intent of the electorate rather than legislative intent that is controlling. Accordingly, while we may give weight to the Legislature’s view of the meaning of a constitutional provision, the intent of the electorate is paramount. (Id. at pp. 1277-1278.) Nevertheless, the perceived will of the electorate is no substitute for linguistic clarity. We must strictly construe restrictions on the legislative power and must uphold a legislative act “unless its unconstitutionality clearly, positively, and unmistakably appears. . . .” (People v. *1219 Hansel (1992) 1 Cal.4th 1211, 1219 [4 Cal.Rptr.2d 888, 824 P.2d 694]; Hoogasian Flowers, Inc. v. State Bd. of Equalization, supra, 23 Cal.App.4th at p. 1270.)

Although the general rule of constitutional adjudication requires judicial deference to legislative classifications, in some circumstances heightened judicial scrutiny is required. For example, where a legislative enactment involves a suspect classification, such as one based upon race, or touches on a fundamental interest, such as freedom of speech, then the ordinary deference owed to legislative action vanishes. (Spiritual Psychic Science Church v. City of Azusa (1985) 39 Cal.3d 501, 514 [217 Cal.Rptr. 225, 703 P.2d 1119]; D’Amico v. Board of Medical Examiners (1974) 11 Cal.3d 1, 17 [112 Cal.Rptr. 786, 520 P.2d 10].) Recently, in Professional Engineers v. Department of Transportation (1997) 15 Cal.4th 543 [63 Cal.Rptr.2d 467, 936 P.2d 473], the high court considered an unusual situation in which the Legislature essentially attempted to reverse a final judgment of a superior court enjoining a constitutional violation by adopting certain statutory declarations. The court compared the situation to one involving a fundamental right and held the legislative declarations to be subject to independent judicial review. (Id. at pp. 568-569, 572-573.) Other situations may also arise where the usual rule of deference is inappropriate. However, in this case we are considering the validity of an item in the state budget act, which is a matter expressly committed by our state Constitution to the Legislature and the Governor. Upon such matters the rule of judicial deference is applicable. (Dittus v. Cranston, supra, 53 Cal.2d at p. 286.)

In Brooks, the court was concerned with a constitutional provision that made a city charter effective when approved by the Legislature. The petitioner contended that legislative approval would have to be manifested in a bill submitted to the Governor for approval or rejection since, with respect to the making of laws, the Governor is part of the Legislature. The court rejected the contention, holding that the despite the governor’s participation in the lawmaking process, the Governor is not part of the Legislature and that the requirement of approval by the Legislature meant approval by the Senate and Assembly, however manifested. (79 Cal. at pp. 176-177.)

For that matter, the Constitution requires the Judicial Council to “make recommendations annually to the Governor and the Legislature . . . .” (Cal. Const., art. VI, § 6.)

 We will not, at this juncture, attempt to provide a precise definition of the meaning of “operating expenses” within the context of the constitutional provision. References to various definitional sources, some of which we have cited above, establish that while there may be some items that are clearly within or without “operating expenses” in particular cases, the *1225 only way to create a precise definition in a particular context would be to create a list of what is or is not included in that context. The creation of a such a list in this instance would be beyond the judicial function and would usurp the first level authority of the Legislature and of the Governor in the budgetary process. (Dittus v. Cranston, supra, 53 Cal.2d at p. 286; Stevenson v. Colgan, supra, 91 Cal. at pp. 652-653.)

Constitutional civil service requirements have general application to employees of the executive branch. Officers and employees appointed or employed by the Legislature, either house, or legislative committees are exempt from civil service, as are officers and employees of the judiciary. (Cal. Const., art. VII, § 4, subds. (a), (b).)

The nature of the Legislative Counsel is not new. It was originally created in 1913. (Stats. 1913, ch. 322, §§ 1-8, pp. 626-629.) Although some changes in the manner of selection of its chief have occurred, since its inception the Legislative Counsel has remained independent, *1227 nonpartisan, nonadvocative, and nonexclusive. (See Note, Legislatures and Legislators: Statutes: California Legislative Aids (1951) 39 Cal.L.Rev. 288.)

The dissent notes that by resolution the Legislature has chosen to require any bill introduced to be accompanied by a digest prepared and attached to the bill by the Legislative Counsel. (Sen. Cone. Res. No. 1, Stats. 1991 (1991-1992 Reg. Sess.) res. ch. 126, SI 8.5, p. 6171.) From this the dissent reasons that the Legislature cannot “operate” without the Legislative Counsel and, therefore, the Legislative Counsel represents an operating expense of the Legislature. The dissent suggests that our contrary conclusion leads to the result that legal services that are essential to the enactment of laws are not operating expenses. We reject *1229 the reasoning of the dissent because we reject the premise upon which it is based. The Constitution prescribes certain procedures for the enactment of legislation and a reference to the Legislative Counsel is not one of them. (Cal. Const., art. IV, §§ 8-10.) Internal rules of procedure, such as the resolution cited by the dissent, are constitutionally committed to the exclusive province of the Legislature. (Cal. Const., art. IV, § 3, subd. (a), § 7, subd. (a).) These internal rules of procedure are nonjusticiable and the Legislature can enact legislation without submitting it to the Legislative Counsel by (1) adopting a resolution repealing the cited resolution; (2) adopting a resolution permitting it to consider a particular bill without complying with the cited resolution; or (3) ignoring the cited resolution and proceeding with consideration of the bill without submitting it to the Legislative Counsel. In any such eventuality, the failure to submit a bill to the Legislative Counsel is a matter that is without legal significance. (See Spaulding v. Desmond (1922) 188 Cal. 783, 790 [207 P. 896]; County of Yolo v. Colgan (1901) 132 Cal. 265, 274-275 [64 P. 403].) Accordingly, the cited resolution does not establish that the Legislature cannot operate without the Legislative Counsel, but only that it chooses to utilize the services of the Legislative Counsel. This litigation presupposes the latter to be the case for otherwise there would be no controversy.

The dissent indicates a concern that the Legislature could, inadvertently or by design, circumvent its budgetary limitations, and it suggests our conclusion leads to the result that the computers sitting on the desks of legislators are not their “equipment.” (Dis. opn., post, at p. 1231.) It proposes an order holding that the Legislature must count in its budget all items of support from whatever source, which constitute normal operating expenses and equipment. We reject the dissent’s approach. It relies upon hypothetical future problems (California *1231 Teachers Assn. v. Hayes, supra, 5 Cal.App.4th at p. 1529), to propose a vague order of such possible breadth as to potentially cause a qualitative revision in our basic governmental plan (Legislature v. Eu, supra, 54 Cal.3d at pp. 506-509), with respect to a matter upon which strict construction and judicial restraint are demanded (Pacific Legal Foundation v. Brown, supra, 29 Cal.3d at p. 180). It bears emphasis that plaintiff’s complaint challenges, on its face and in its entirety, the Legislature’s decision to exclude the budget of the Legislative Counsel from the budget of the Legislature, and hence from the Legislature’s spending cap. Plaintiff has not set forth, nor attempted to set forth, a cause of action challenging the budget treatment of a specific item of expenditure, such as the computers utilized by legislators. We have considered plaintiff’s complaint in the limited form in which he has chosen to pursue this action. We do not suggest that the Legislature has an unreviewable authority to choose which expenditures to count toward its spending limitation. Rather, we hold that budget decisions are in the first instance committed to the Legislature and the Governor, their decisions are entitled to a presumption of constitutionality, and judicial review is limited in the manner we have stated in part III of the discussion, ante. Our decision is without prejudice to maintenance of an action by plaintiff or other interested party challenging the budget treatment of specific items of expenditure and we leave to the eventuality of such an action the determination of the appropriate remedy.