[No. B199297. Second Dist., Div. Eight. Mar. 13, 2008.]

VIOLA RIPPON et al., Plaintiffs and Appellants, v.
DEBRA BOWEN, as Secretary of State, etc., et al., Defendants and
Respondents.

**COUNSEL**

Kiesel Boucher Larson, Raymond P. Boucher and Michael Eyerly for Plaintiffs and Appellants.

Edmund G. Brown, Jr., Attorney General, Christopher Krueger, Assistant Attorney General, Stephen Acquisto and Mark R. Beckington, Deputy Attorneys General, for Defendant and Respondent Debra Bowen.

Raymond G. Fortner, Jr., County Counsel, and Judy W. Whitehurst, Principal Deputy County Counsel, for Defendant and Respondent Dean Logan.

**OPINION**

**COOPER, P. J.**—California voters passed Proposition 140 in November 1990, and thereby limited the Legislature's budget and imposed lifetime term limits and pension restrictions for state legislators and other state officers.

(*Legislature v. Eu* (1991) 54 Cal.3d 492, 502, 506 [286 Cal.Rptr. 283, 816 P.2d 1309] (*Eu*).) The purpose of the initiative was that incumbent advantages " 'discourage qualified candidates from seeking public office and create a class of career politicians, instead of the citizen representatives envisioned by the Founding Fathers.' " (*Id.* at p. 501.) In this appeal, appellants revisit a constitutional challenge to Proposition 140 raised shortly after its passage: they argue Proposition 140 revised the California Constitution and is therefore invalid.

Except for the pension restrictions, our Supreme Court and an en banc panel of the Ninth Circuit upheld the constitutionality of Proposition 140. (*Eu*, *supra*, 54 Cal.3d 492; *Bates v. Jones* (9th Cir. 1997) 131 F.3d 843 (*Bates*).) In *Eu*, our high court concluded "the basic and fundamental structure of the Legislature as a representative branch of government is left substantially unchanged by Proposition 140. Term and budgetary limitations may affect and alter the particular legislators and staff who participate in the legislative process, but the process itself should remain essentially as previously contemplated by our Constitution." (*Eu*, at p. 508.) Therefore, the high court concluded that Proposition 140 amended the California Constitution; it did not revise the California Constitution, precisely the issue in this case. (*Eu*, at pp. 510–511.) Following *Eu*, we affirm the judgment on the pleadings.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Parties*

Plaintiffs and appellants are Viola Rippon, Marian Bergeson, and Patrick Johnston. Each claimed that Proposition 140 affected his or her ability to vote for experienced, knowledgeable legislators. Bergeson is a former state Assembly member and former state senator. She alleged she is unable to further serve in the California state Senate or Assembly. Johnston is a former state senator and alleged he is precluded from further serving as a member of the state Senate. (While the Secretary of State disputes some of these allegations, we assume them to be true for purposes of this appeal.)

Defendant and respondent Debra Bowen is the Secretary of State. Defendant and respondent Dean Logan is the Acting Registrar-Recorder/County Clerk in Los Angeles County. Logan takes no position on the issues in this case and "will abide by the laws of the State as written or as finally determined by the Courts."

### 2. *The Complaint*

Appellants filed a complaint seeking injunctive and declaratory relief. Appellants alleged that the term limits and budget restrictions in Proposition

140 revised the California Constitution, divested the Legislature of its constitutionally mandated functions, and must be declared void. According to appellants, a constitutional revision occurred because the initiative fundamentally changed the structure of government and altered the balance of power between the executive and legislative branches of government. Appellants also alleged that Proposition 140 rendered the Legislature unable to competently perform its essential legislative function.

The following specifics were alleged. The Legislature can no longer fulfill its constitutional mandate to promulgate the laws necessary to meet the state's needs. The number of bills introduced in the Legislature has declined; the collective experience of the Legislature has declined, decreasing the Legislature's ability to make long-term policy and increasing the importance of special interest groups. Experienced committee chairs no longer analyze and scrutinize bills prior to the passage of the legislation. Funding cuts make it impossible for the Legislature to perform its constitutional mandates. The Legislature is no longer a coequal branch of government; it can no longer offer a check and balance against executive power; and it no longer serves as the "keeper of the purse." State budgets undergo less scrutiny and contain fewer long-term budget items.[1]

Appellants sought an order declaring Proposition 140 void in its entirety, and declaring that Proposition 140 effected a revision to the California Constitution. They also sought an injunction enjoining respondents from enforcing the term limits contained in section 2, subdivision (a) of article IV of the California Constitution.

3. *The Proceedings*

The trial court granted the Secretary of State's motion for judgment on the pleadings. The court concluded appellants lack standing to maintain the action. On the merits, the court found that this case is barred by stare decisis because the California Supreme Court already has held that Proposition 140 does not effect a revision to the California Constitution. Appellants timely appealed.

## DISCUSSION

The standard of review for a judgment on the pleadings is the same as for a demurrer. (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205,

---

[1] The complaint also alleged that the initiative violates the guaranty clause of article IV, section 4 of the United States Constitution. On appeal, appellants make no argument with respect to this cause of action.

1216 [70 Cal.Rptr.2d 745] (*Schabarum*).) All allegations in the complaint and matters upon which judicial notice may be taken are assumed to be true. (*Connerly v. Schwarzenegger* (2007) 146 Cal.App.4th 739, 746 [53 Cal.Rptr.3d 203].) We begin with a brief description of the difference between a constitutional amendment and a constitutional revision to set the stage for an extended discussion of *Eu, supra,* 54 Cal.3d 492.

I. *Distinction Between an Amendment and a Revision*

█ Article XVIII of the California Constitution allows for amendment of the Constitution by the Legislature or initiative, and revision of the Constitution by the Legislature, or a constitutional convention. There is no other method for revising or amending the Constitution. (*Livermore v. Waite* (1894) 102 Cal. 113, 117 [36 P. 424] (*Livermore*).) Relevant here, the Constitution may be revised only through a constitutional convention and popular ratification or legislative submission of the measure to the people. (*McFadden v. Jordan* (1948) 32 Cal.2d 330, 334 [196 P.2d 787] (*McFadden*); *California Assn. of Retail Tobacconists v. State of California* (2003) 109 Cal.App.4th 792, 833 [135 Cal.Rptr.2d 224] (*California Tobacconists*).)

█ " '[A]mendment' implies such an addition or change within the lines of the original instrument as will effect an improvement, or better carry out the purpose for which it was framed." (*Livermore, supra,* 102 Cal. at pp. 118–119.) The "revision/amendment analysis has a dual aspect, requiring us to examine both the quantitative and qualitative effects of the measure on our constitutional scheme. Substantial changes in either respect could amount to a revision." (*Raven v. Deukmejian* (1990) 52 Cal.3d 336, 350 [276 Cal.Rptr. 326, 801 P.2d 1077] (*Raven*).) "[A]n enactment which is so extensive in its provisions as to change directly the 'substantial entirety' of the Constitution by the deletion or alteration of numerous existing provisions may well constitute a revision thereof. However, even a relatively simple enactment may accomplish such far reaching changes in the nature of our basic governmental plan as to amount to a revision also." (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 223 [149 Cal.Rptr. 239, 583 P.2d 1281] (*Amador*).)

A. *Examples of Constitutional Amendments*

In *Amador, supra,* 22 Cal.3d 208, our high court considered Proposition 13 on the June 1978 ballot. The proposition imposed a limitation on the tax rate applicable to real property, restricted the assessed value of real property, limited the method of changes to state taxes, and imposed a restriction on local taxes. (*Amador,* at p. 220.) The high court rejected the argument that the proposition revised rather than amended the Constitution. (22 Cal.3d at

pp. 227–228.) Although there would be "substantial changes in the operation of the former system of taxation," the changes did not constitute a constitutional revision. (*Id.* at p. 228.)

Similarly, in *Brosnahan v. Brown* (1982) 32 Cal.3d 236 [186 Cal.Rptr. 30, 651 P.2d 274] (*Brosnahan*), the court concluded that the "Victims' Bill of Rights" (Prop. 8 in June 1982) did not constitute a revision of the Constitution. "[W]hile Proposition 8 does accomplish substantial changes in our criminal justice system, even in combination these changes fall considerably short of constituting 'such far reaching changes in the nature of our *basic governmental plan* as to amount to a revision . . . .' " (*Brosnahan*, at p. 260.) The court rejected the petitioners' "wholly conjectural" predictions. (*Id.* at p. 261.) "[N]othing contained in Proposition 8 necessarily or inevitably will alter the basic governmental framework set forth in our Constitution. It follows that Proposition 8 did not accomplish a 'revision' of the Constitution within the meaning of article XVIII." (*Ibid.*) The high court later rejected a subsequent challenge to a portion of Proposition 8, finding that *Brosnahan* "necessarily encompassed a conclusion that [the portion] was properly adopted through the amendment procedure." (*In re Lance W.* (1985) 37 Cal.3d 873, 891 [210 Cal.Rptr. 631, 694 P.2d 744].)

### B. *Examples of Constitutional Revisions*

In *McFadden, supra,* 32 Cal.2d 330, a proposed measure sought to add a new article to the Constitution "to consist of 12 separate sections (actually in the nature of separate articles) divided into some 208 subsections (actually in the nature of sections) set forth in more than 21,000 words." (32 Cal.2d at p. 334.) In comparison, the Constitution at that time "contain[ed] 25 articles divided into some 347 sections expressed in approximately 55,000 words." (32 Cal.2d at p. 334.) The new measure would have altered substantially at least 15 of 25 articles in the Constitution and introduced at least four new topics. (32 Cal.2d at p. 345.) The court found the proposed change to constitute an invalid constitutional revision.

*Raven, supra,* 52 Cal.3d 336, concerned the "Crime Victims Justice Reform Act" (Prop. 115, approved by the voters in June 1990). The court concluded that the following provision constituted a qualitative constitutional revision and was therefore invalid: "certain enumerated criminal law rights shall be construed consistently with the United States Constitution, and shall not be construed to afford greater rights to criminal or juvenile defendants than afforded by the federal Constitution." (*Raven*, at pp. 342–343.)

The high court reasoned that the enactment effected a far-reaching change in the nature of basic government because it "would vest all judicial

*interpretive* power, as to fundamental criminal defense rights, in the United States Supreme Court. From a qualitative standpoint, the effect of Proposition 115 is devastating." (*Raven, supra,* 52 Cal.3d at p. 352.) "California courts in criminal cases would no longer have authority to interpret the state Constitution in a manner more protective of defendants' rights than extended by the federal Constitution, as construed by the United States Supreme Court." (*Ibid.*) "Proposition 115 not only unduly restricts judicial power, but it does so in a way which severely limits the independent force and effect of the California Constitution." (*Id.* at p. 353.) Proposition 115 "substantially alters the preexisting constitutional scheme or framework heretofore extensively and repeatedly used by courts in interpreting and enforcing state constitutional protections. It directly contradicts the well-established jurisprudential principle that, 'The judiciary, from the very nature of its powers and means given it by the Constitution, must possess the right to construe the Constitution in the last resort . . . .' " (*Raven,* at p. 354.) The provision "vests a critical portion of state judicial power in the United States Supreme Court, certainly a fundamental change in our preexisting governmental plan." (*Id.* at p. 355.)

## II. Eu *Bars This Lawsuit*

### A. Eu *Holds That Proposition 140 Did Not Revise the California Constitution*

Our high court analyzed whether Proposition 140 constituted a constitutional amendment or a constitutional revision in *Eu, supra,* 54 Cal.3d 492. The Legislature along with individual legislators, citizens, voters, and taxpayers challenged the constitutionality of Proposition 140. The petitioners argued that Proposition 140 effected a constitutional revision, the identical argument made in the present case. (*Eu,* at p. 506.) Specifically, the petitioners argued, " 'Weakened by budget cuts and harsh term limits, the Legislature will be unable to discharge its traditional duties of policymaker, keeper of the purse, and counterweight to the executive branch in the way the Constitution intends. The result is a change so profound in the structure of our government that it constitutes a revision . . . .' " (*Id.* at p. 507.)

The high court rejected these arguments and instead found "the basic and fundamental structure of the Legislature as a representative branch of government is left substantially unchanged by Proposition 140. Term and budgetary limitations may affect and alter the particular legislators and staff who participate in the legislative process, but the process itself should remain essentially as previously contemplated by our Constitution." (*Eu, supra,* 54 Cal.3d at p. 508.) "Proposition 140 on its face does not affect either the structure or the foundational powers of the Legislature, which remains free to

enact whatever laws it deems appropriate. The challenged measure alters neither the content of those laws nor the process by which they are adopted. No legislative power is diminished or delegated to other persons or agencies. The relationships between the three governmental branches, and their respective powers, remain untouched." (*Id.* at p. 509.)

The court concluded, in a paragraph emphasized by appellants, that "although the immediate foreseeable effects of the foregoing term and budgetary limitations are indeed substantial (primarily, the eventual loss of experienced legislators and some support staff), the assertedly momentous consequences to our governmental scheme are largely *speculative* ones, dependent on a number of as yet unproved premises." (*Eu, supra*, 54 Cal.3d at p. 509.) "Petitioners assume, for example, that the eventual loss of experienced legislators, and the arrival of their relatively unseasoned replacements, will irreparably hinder and damage the legislative process. Yet respondents argue with equal conviction that Proposition 140's term limitations will free the entire process from the control of assertedly entrenched, apathetic, veteran incumbents, thereby allowing fresh creative energies to flourish free of vested, self-serving legislative interests." (*Ibid.*)

The court then instructed that the speculative nature of the petitioners' arguments demonstrated that a revision did not appear from the face of the challenged provision. "We are in no position to resolve the controversy between the parties regarding the long-term consequences of Proposition 140, for the future effects of that measure on our 'basic governmental plan' are simply unfathomable at this time. Indeed, that very uncertainty inhibits us from holding that a constitutional revision has occurred in this case. Our prior decisions have made it clear that to find such a revision, it must *necessarily or inevitably appear from the face* of the challenged provision that the measure will substantially alter the basic governmental framework set forth in our Constitution." (*Eu, supra*, 54 Cal.3d at p. 510.)

Justice Mosk disagreed with the conclusion of the majority, but applied the same test. He concluded, "Proposition 140 amounts to an unconstitutional revision of the state charter *on its face* and, as a result, is invalid." (*Eu, supra*, 54 Cal.3d at p. 538, italics added (conc. & dis. opn. of Mosk, J.).) "Manifestly, Proposition 140 amounts to an unconstitutional revision because of its significant effect on the Legislature." (*Id.* at p. 543.) "[T]he Legislature is a fundamental component of the state constitutional system." (*Ibid.*) "[T]he Legislature must be deemed fundamentally altered by any substantial change in its nature or character" and the change that would be effected by Proposition 140 is substantial. (*Eu*, at p. 543 (conc. & dis. opn. of Mosk, J.).) Justice Mosk explained: "The majority conclude to the contrary. They reason that Proposition 140's possible future consequences for the Legislature are

not dispositive. I agree. They also reason that the initiative does not affect the Legislature's constitutional structure or powers. Again, I agree. But . . . a judiciary comprising laypersons is fundamentally different from one made up of jurists—even if its structure and powers are the same. Similarly, a Legislature of 'citizens' is fundamentally different from one of 'politicians.' " (*Id.* at p. 544.)

### B. Eu *Controls This Case*

■ We are bound by the ruling in *Eu.* (*Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The high court held that Proposition 140 does not revise the basic form of government. It is a constitutional amendment, not a constitutional revision. (*Eu, supra,* 54 Cal.3d at pp. 510–511.) That conclusion is dispositive of appellants' case. Under *Eu,* for a revision to be found, "it must *necessarily or inevitably appear from the face* of the challenged provision that the measure will substantially alter the basic governmental framework set forth in our Constitution. [Citations.]" (*Id.* at p. 510; see also *California Tobacconists, supra,* 109 Cal.App.4th at p. 834.) If it does not necessarily or inevitably appear from the face of an initiative that the provisions will substantially alter the basic governmental framework, the change is not a revision to the Constitution. (See *California Tobacconists,* at p. 834.)

Because the predictions in *Eu* were speculative, it showed that nothing contained in the proposition "necessarily or inevitably" altered the basic governmental framework. (See *Brosnahan, supra,* 32 Cal.3d at p. 261.) The speculative nature of the arguments was relevant to determining whether the proposition was an amendment; it was not an invitation to subsequently mount an identical challenge to the initiative. Appellants misinterpret *Eu* by erroneously concluding that the speculative nature of the petitioners' arguments left room for a subsequent challenge to the constitutionality of the initiative on the ground that it is a revision. Under appellants' theory, there would be no limit to the number of times the revision/amendment analysis could be revisited. "Amend" and "revise" connote procedures (*McFadden, supra,* 32 Cal.2d at p. 347), and an initiative is either one or the other, regardless of the passage of time since the enactment of the initiative.

■ Appellants argue that we should apply the public interest exception to res judicata. The argument is tantamount to an acknowledgement that the issues in this case already have been litigated.[2] The doctrine of res judicata applies to preclude "the relitigation of certain matters which have been

---

[2] Neither the motion for judgment on the pleadings or opposition briefs the issue of res judicata, but appellants have invoked the public interest exception in their briefs on appeal.

resolved in a prior proceeding under certain circumstances. [Citation.]" (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 556 [90 Cal.Rptr.2d 469].) Appellants argue that we should apply the exception to the doctrine of res judicata that " 'when the issue is a question of law rather than of fact, the prior determination is not conclusive either if injustice would result or if the public interest requires that relitigation not be foreclosed. [Citations.]' " (*City of Sacramento v. State of California* (1990) 50 Cal.3d 51, 64 [266 Cal.Rptr. 139, 785 P.2d 522].)

The Ninth Circuit applied the public interest exception to res judicata to reconsider the constitutionality of Proposition 140 after *Eu.* (*Bates, supra,* 131 F.3d at pp. 845–846.) We need not decide if unusual circumstances are present here to warrant applying *a second time* the public interest exception to res judicata because even if appellants were allowed to relitigate the issue, we are bound by the holding of our Supreme Court. (*Auto Equity Sales, Inc. v. Superior Court, supra,* 57 Cal.2d at p. 455.)

This is not a case, like those cited by appellants, where the law has changed since it was first considered or where the law arose from an emergency situation and should be deemed terminated once the emergency abated. (See, e.g., *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 [195 P.2d 1]; *Chastleton Corp. v. Sinclair* (1924) 264 U.S. 543 [68 L.Ed. 841, 44 S.Ct. 405]; but see *Santa Monica Beach, Ltd. v. Superior Court* (1999) 19 Cal.4th 952, 1005 [81 Cal.Rptr.2d 93, 968 P.2d 993].) Proposition 140 is the same and the arguments appellants raise are the same as those raised in *Eu, supra,* 54 Cal.3d 492.

### C. *The Passage of Time Does Not Alter the Nature of the Challenge*

Appellants characterize their challenge as an "as applied" challenge to the constitutionality of Proposition 140. According to their opening brief, appellants "allege that Proposition 140 as applied has achieved a qualitative change in our Constitution; it has altered the basic form of our government."

Notwithstanding appellants' "as applied" label, the challenge is the same facial challenge as that made in *Eu,* and the relief sought is the invalidation of the entire initiative. The complaint attacks Proposition 140 because of its effects on the California Legislature. For example, appellants support the claim that Proposition 140 resulted in a change to our form of government with the following statements: "The effect of Proposition 140 has been to dramatically reduce the role of the legislative branch and increase the powers vested in the executive branch and the governor. Proposition 140 has fundamentally altered the relationship between the separate branches of government; it has ceded constitutionally vested roles, functions and powers from the legislative branch to the executive branch and other entities.

Proposition 140 has subordinated the constitutional role assumed by the legislative branch in our governmental scheme and substantially altered California's preexisting constitutional framework."

 Appellants' challenge is not "as applied" even though they characterize it as such. First, and most significantly, the question of whether an initiative constitutes an amendment or a revision requires analysis of the statute on its face. The purported "as applied" challenge is inconsistent with the test for a constitutional revision that "must *necessarily or inevitably appear from the face* of the challenged provision." (*Eu, supra*, 54 Cal.3d at p. 510.) Therefore, their label simply applies the wrong test to analyze the question they ask.

Second, appellants allege no particularized injury that, as applied to them in particular, deprived them of a right. Instead, they argue for example that they "seek[] to undo the damaging effects caused by Proposition 140's legislative term limits on California." They seek to assist all legislatures who are currently subject to term limits to run for office. According to them, "even if Appellants[] prevail on this appeal, it will be of no consequence to those legislators now facing term limits and their constituents unless Appellants prevail quickly." They do not seek to prevent a specific application of any provision enacted pursuant to Proposition 140, but instead seek to invalidate the initiative as a whole.

 Third, the so-called "as applied" test appellants propose—to reevaluate the initiative "in light of the actual qualitative consequences now known to have been caused by the initiative"—raises a question with respect to the role of the judiciary in deciding, 17 years after the passage of an initiative, the wisdom of an initiative enacted by the people. It is the court's role and obligation to decide if an act is unconstitutional. (*Schabarum, supra*, 60 Cal.App.4th at p. 1213.) That is what the Supreme Court did in *Eu*.

But, in *Eu*, the court eschewed opining on the petitioners' arguments that "the eventual loss of experienced legislators, and the arrival of their relatively unseasoned replacements, will irreparably hinder and damage the legislative process" and the respondents' counterarguments that "Proposition 140's term limitations will free the entire process from the control of assertedly entrenched, apathetic, veteran incumbents, thereby allowing fresh creative energies to flourish free of vested, self-serving legislative interests." (*Eu, supra*, 54 Cal.3d at p. 509.) The same effects were described pejoratively by the petitioners in *Eu* and laudably by the respondents in *Eu*. Our high court, however, narrowed its analysis to the constitutional question before it—whether it "*necessarily or inevitably appear[s] from the face* of the challenged provision that the measure will substantially alter the basic

governmental framework set forth in our Constitution." (*Id.* at p. 510.) In his dissent, Justice Mosk made clear that the question was whether the change from a "Legislature of 'politicians,'" to one that prohibits such a result" was the question, not the "wisdom" of the initiative. (*Id.* at p. 542 (conc. & dis. opn. of Mosk, J.).)

To look beyond changes to the Legislature that "necessarily and inevitably" appear on the face of the initiative takes us uncomfortably close to a political question. The political question doctrine " 'excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the [legislative and executive branches].' " (*Schabarum, supra,* 60 Cal.App.4th at p. 1213.) We need not conclusively determine whether an "as applied" challenge based on "qualitative effects" of Proposition 140 in its 17 years of existence amounts to a political question, because it is, as explained, the wrong test. The correct test is a facial one, and that test has already been applied by our high court. (*Eu, supra,* 54 Cal.3d at p. 510.)

In *Eu,* the high court made clear what appellants could do if the then speculative predictions were borne out: "If, as petitioners predict, Proposition 140 ultimately produces grave, undesirable consequences to our governmental plan, the Legislature (Cal. Const., art. XVIII, § 1) or the people (*id.,* art. XVIII, § 3) are empowered to propose a new constitutional amendment to correct the situation." (*Eu, supra,* 54 Cal.3d. at p. 512.) Those avenues remain available.[3]

### D. *Appellants Do Not Challenge a Particular Interpretation or Application of Proposition 140*

It is true that our Supreme Court has stressed that analysis of the amendment/revision distinction is not tantamount to an " 'Analysis of the

---

[3] Appellants have standing to raise a facial challenge contrary to the Attorney General's argument. Generally, our high court has allowed taxpayers to challenge whether a voter initiative is a constitutional amendment or a constitutional revision. (*Livermore, supra,* 102 Cal. at p. 115; *Raven, supra,* 52 Cal.3d at p. 340; *Brosnahan, supra,* 32 Cal.3d at p. 240; *Amador, supra,* 22 Cal.3d at p. 219.) In *Bates,* the Ninth Circuit allowed a former member of the Assembly and his supporters to challenge the constitutionality of Proposition 140. (*Bates, supra,* 131 F.3d at p. 845.) Our high court made no distinction in *Eu* between the different petitioners and we conclude appellants have standing to challenge whether Proposition 140 constitutes a constitutional revision, which as we have explained doctrinally requires the application of a facial test. Appellants' facial challenge does not call for an advisory opinion, because if it were correct, appellants allege (and at this stage we assume) it would affect their ability to run for office and to vote for "termed out" legislators. This is an "actual or potential adverse effect[] resulting from the adoption and ultimate operation of the article." (*Amador, supra,* 22 Cal.3d at p. 219.)

problems which may arise respecting the interpretation or application of particular provisions of the act.'" (*Amador, supra*, 22 Cal.3d at p. 219.) Analysis of particular problems "'should be deferred for future cases in which those provisions are more directly challenged.'" (*Ibid.*)[4] Here appellants do not seek the interpretation of any particular provision of Proposition 140, but instead seek to invalidate the entire proposition based on their allegations that it revised the Constitution.

This is not a case where appellants challenge a particular provision enacted by Proposition 140. *Schabarum, supra*, 60 Cal.App.4th 1205, is an example of such a case. It involved a challenge to article IV, section 7.5 of the California Constitution, which was enacted as part of Proposition 140. In that case, the court considered "whether the funds budgeted for the Legislative Counsel Bureau must be included in the budget of the Legislature for purposes of constitutional spending limitations." (*Schabarum*, at p. 1211.) The majority held that excluding the budget for the Legislative Counsel from the Legislature's spending cap was not unconstitutional. (*Id.* at pp. 1227, 1230.)

In contrast to *Schabarum*, which involved a challenge to a specific substantive change caused by the initiative, the issue appellants seek to litigate—whether Proposition 140 constitutes a revision—is identical to the issue decided in *Eu*. While appellants allege they now have more conclusive evidence than that presented to our high court in *Eu*, that evidence is irrelevant to determine whether it appeared from the face of the initiative that the initiative necessarily and inevitably changed the basic form of government. Nor does the existence of additional evidence relating to the role of the Legislature transform a facial attack on Proposition 140 into an "as applied" constitutional challenge.

We do not hold that appellants cannot challenge a specific provision by raising either a facial or an as applied challenge. We hold only that the question of whether Proposition 140 constitutes an amendment or a revision was already decided in *Eu* and forecloses appellants' current challenge. The trial court correctly granted the Secretary of State's motion for judgment on the pleadings.

---

[4] This same principle was applied in *Brosnahan*: "At this time we neither consider nor anticipate possible attacks, constitutional or otherwise, which in the future may be directed at the various substantive changes effected by Proposition 8. . . . [W]e examine here 'only those principal, fundamental challenges to the validity of [Prop. 8] as a whole . . . . "Analysis of the problems which may arise respecting the interpretation or application of particular provisions of the act should be deferred for future cases in which those provisions are more directly challenged." [Citation.]'" (*Brosnahan, supra*, 32 Cal.3d at p. 241.)

## DISPOSITION

The judgment is affirmed. Respondents are entitled to costs on appeal.

Flier, J., and Egerton, J.,[*] concurred.

On March 19, 2008, the opinion was modified to read as printed above. Appellants' petition for review by the Supreme Court was denied June 11, 2008, S163024.

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.