Filed 1/4/22  P. v. Santana CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>     v.<br><br>ALEJANDRO SANTANA,<br><br>       Defendant and Appellant. | C093432<br><br>(Super. Ct. No. 00F06961) |

A jury found defendant Alejandro Santana guilty of the robbery-carjacking murder of a car salesman while on a test drive in 2000.  He was sentenced to life without the possibility of parole and we affirmed his convictions on appeal.  (*People v. Santana* (June 10, 2010, C060202) [nonpub. opn.] (*Santana*).)

Defendant now appeals from the summary denial of his postjudgment petition to vacate his murder conviction under Penal Code section 1170.95.[1]  He contends the trial

---

[1]  Further undesignated statutory references are to the Penal Code.

1

court deprived him of his statutory right to the assistance of counsel and his right to due process by summarily denying his petition without giving counsel an opportunity to be heard. He also argues the trial court could not rely on this court's recital of an alleged unadjudicated fact in *Santana*—that he was the actual killer—to conclude as a matter of law that he was ineligible for relief under section 1170.95.

We agree the trial court erred in summarily denying the petition without first obtaining briefing from defense counsel but hold that the error was harmless because the record of conviction, which the trial court properly considered, establishes defendant's ineligibility as a matter of law. We therefore affirm.

## BACKGROUND[2]

A few months before the murder in 2000, defendant purchased a maroon Camaro Z28 with a defective transmission. He told several coworkers that he intended to steal a car for its transmission, that he had a gun, that a new transmission would cost $6,000, that he could not afford a new transmission, and that he would need help removing a transmission from another car and putting it into his.

On the morning of August 22, 2000, defendant and his friend Jose Rivera did not go to work. Defendant's father saw defendant with someone who looked like Rivera having breakfast at the restaurant where defendant's father worked. Later that day, three skinny young men—Anthony Camacho, Rivera, and Theodore Santos—accompanied defendant, who was much chunkier than his friends, to a car dealership. Defendant and Camacho went on a test drive in a green or teal Camaro with the victim while Rivera and Santos followed in Rivera's black Camaro. Defendant, who was sitting in the backseat,

---

[2] Defendant requested that we take judicial notice of the record in his direct appeal in case No. C060202, including this court's prior unpublished opinion in *Santana*. We treated the request as a motion to incorporate the record in case No. C060202 and granted the motion. We take the facts from our unpublished opinion in *Santana* affirming defendant's convictions. (*Santana, supra*, C060202.)

2

shot the salesman in the back of the head. He and Camacho then dumped the victim's body on the side of the freeway.

Witnesses observed three Hispanic males wiping off a greenish-blue Camaro in a parking lot on Q Street. One of the men was chubby, probably weighing between 200 and 220 pounds. The witnesses saw the stocky man get into a black Camaro with his skinny friend and drive away. They went to a park, where defendant tossed a shirt into the river. The shirt was recovered and admitted as evidence at trial.

The four men went to Rivera's apartment. A witness saw a short, thin young man and a heavyset man take a white plastic bag to the dumpster. Police found a pair of blue jeans with a 40-inch waist, a white shirt, and socks in the plastic bag. Defendant admitted the jeans may have been his, and DNA testing determined that material found on the jeans genetically matched both defendant and the victim.

Rivera called a coworker, Daniel Soto, and asked to exchange cars, purportedly to drive his mother to the hospital. A second coworker, Nathan Brones, accompanied Soto to the exchange and testified that Rivera's companion was wearing purple sweatpants and worn hiking boots. Soto was "75 percent sure" Rivera's companion was defendant.

Camacho, Rivera, and Santos were apprehended and tried for murder. Camacho and Rivera were convicted of murder, and Santos was convicted of being an accessory after the fact.[3] Defendant fled to Mexico, where he lived under a false identity for five years. He was arrested in Mexico in 2005, deported, and subsequently tried for the car salesman's murder.

At defendant's trial, Santos was reluctant to testify, claiming that the hypnosis he underwent in 2004 helped him to forget the details about the murder. The prosecution,

---

[3] *People v. Rivera* (Sept. 28, 2004, C042375), [nonpub. opn.]; *People v. Camacho* (Apr. 10, 2003, C042933), [app. dism. by order]; *People v. Rivera* (Mar. 28, 2003, C042375) [Santos app. dism. by order].

however, played a tape for the jury of an interview he had with a detective in August 2000 shortly after the murder. During this interview, Santos described the foregoing chronology of events and identified defendant as the " 'Alex' " who needed the transmission and planned to scare the car salesman out of the car but shot him instead, and who then discarded his shirt and maybe his gun in the river.

Evidence also showed that on the night of the killing, Rivera confided to his close friend and casual lover that he had been involved in a murder. Rivera explained that he owed a friend a favor and agreed to drive him to a car dealership so the friend could steal a car for a new transmission. Unbeknownst to him, his friend had a gun, and he accidentally shot the car salesman who accompanied them on a test drive of the car he planned to steal, then pushed the salesman out of the car onto the side of the freeway. Although Rivera's lover encouraged him to go to the police, he refused because he did not want to " 'snitch' " on his friends. She told him that if the police came looking for him, she would provide them with information regarding where he lived and a description of his car.

Alex Gonzales, one of defendant's friends from high school, testified that defendant was a bully, overbearing, and bigger than all of them. Before the murder, Gonzales had bought a Cobra at the same car dealership. He returned to the dealership several times for repairs, and later asked if he could exchange his Cobra for the teal Camaro. Rivera and Santos teased Gonzales about his car because it was not " 'as fast as a Z28.' "

At trial, defendant argued that witnesses who referred to " 'Alex' " meant Alex Gonzales, and he, not defendant, was responsible for the shooting.

The jury found defendant guilty of first degree murder with true findings of the special circumstances that the murder was committed during a robbery and a carjacking (§ 190.2, subd. (a)(17)), and that defendant personally used a firearm (§ 12022.53, subd. (b)). The jury found not true that he intentionally and personally used a firearm and

4

thereby caused the victim's death (§ 12022.53, subd. (d)). Defendant was sentenced to life without the possibility of parole plus 10 years.

In October 2020, defendant filed a petition for resentencing under section 1170.95. He checked various boxes on a form petition alleging that a complaint, information, or indictment was filed against him that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; that at trial he was convicted of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and that he could not now be convicted of first or second degree murder because of changes made to section 188 and section 189, effective January 1, 2019. He also checked boxes alleging that he was not the actual killer; that he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of first degree murder; that he was not a major participant in the felony or that he did not act with reckless indifference to human life during the course of the crime or felony; and that the victim was not a peace officer.

Defendant's petition requested the appointment of counsel. The trial court appointed defense counsel from the Conflict Criminal Defenders list.

The People moved to dismiss the petition based on defendant's failure to make a prima facie showing that he was eligible for resentencing under section 1170.95. They argued, based on this court's prior opinion in *Santana*, that defendant was ineligible for relief because he actually killed the car salesman during the robbery and carjacking.

Before obtaining briefing from defendant's appointed counsel, the trial court summarily denied defendant's petition in a memorandum decision. The court reasoned that defendant was not entitled to relief as a matter of law because "[t]he appellate opinion affirming [defendant's] conviction and sentence reflects that [defendant] was the actual killer and was convicted of murder on a theory of being the direct perpetrator and

5

not on a theory of felony murder of any degree, or a theory of natural and probable consequences." Defendant timely appealed.

## DISCUSSION

Defendant contends the trial court erred in summarily denying his section 1170.95 petition without obtaining briefing from his appointed counsel, and that the court could not rely on facts from our opinion in *Santana* to deny the petition. While we agree the court erred by denying the petition without first receiving briefing from both parties, we find the error harmless for the reasons explained below.

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).)

Senate Bill No. 1437 achieves these goals by amending section 188 to require that a principal act with express or implied malice (§ 188, as amended by Stats. 2018, ch. 1015, § 2), and by amending section 189 to state that a person can be liable for felony murder only if (1) the "person was the actual killer"; (2) the person, with an intent to kill, was an aider or abettor in the commission of murder in the first degree; or (3) the "person was a major participant in the underlying felony and acted with reckless indifference to human life." (§ 189, subd. (e), as amended by Stats. 2018, ch. 1015, § 3.)

Senate Bill No. 1437 also added section 1170.95, which authorizes convicted murderers who could not be convicted under the law as amended to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts. (§ 1170.95, subd. (a).) Upon receiving a facially sufficient petition (§ 1170.95, subds. (a), (b)), the trial court "shall review the petition and determine if the petitioner has made

6

a prima facie showing that the petitioner falls within the provisions of [the statute]."[4] (§ 1170.95, subd. (c).)  If a petitioner satisfies his or her prima facie burden, the court must issue an order to show cause, and then must hold an evidentiary hearing to determine whether to vacate the murder conviction.  (§ 1170.95, subds. (c), (d)(1).)  At the hearing, the prosecution bears the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing.  (§ 1170.95, subd. (d).)

In *People v. Lewis* (2021) 11 Cal.5th 952, 961-962 (*Lewis*), our Supreme Court interpreted the meaning of section 1170.95, subdivision (c).  It held that if a defendant files a facially sufficient petition and requests appointment of counsel, the trial court must appoint counsel and entertain further briefing from the parties before determining whether the defendant has made a single prima facie showing that he or she is entitled to relief.  (*Lewis, supra*, at pp. 963, 966, 970.)  After appointing counsel and providing an opportunity for briefing, the trial court may then consider the record of conviction, including a prior appellate court opinion, to determine whether the petitioner has made the requisite prima facie showing.[5]  (*Lewis, supra*, at pp. 970-972; *People v. Woodell*

---

[4]  Subdivision (c) of section 1170.95 provides in full:  "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section.  If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner.  The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served.  These deadlines shall be extended for good cause.  If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause."

[5]  We reject defendant's argument that there is "little authority to suggest" the record of conviction includes a prior appellate opinion.  *Lewis* makes clear that "[a]ppellate opinions . . . are generally considered to be part of the record of conviction."  (*Lewis, supra*, 11 Cal.5th at p. 972.)  And while an appellate opinion may " 'not supply all answers' " (*ibid.*), a trial court may consider such an opinion under section 1170.95, subdivision (c) when making the prima facie determination.  (*Lewis, supra*, at pp. 970-971.)

7

(1998) 17 Cal.4th 448, 454-455.) As *Lewis* explains, "[t]he record of conviction will necessarily inform the trial court's prima facie inquiry under section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis, supra*, at p. 971.)

The prima facie inquiry under subdivision (c) is limited, however. (*Lewis, supra*, 11 Cal.5th at p. 971.) The court must take the petitioner's factual allegations as true and it does not engage in factfinding. (*Ibid.*) But, " 'if the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*)

Here, defendant's petition for resentencing met the requirements for facial sufficiency and he requested counsel. *Lewis* therefore dictates the conclusion that the trial court erred in summarily denying defendant's petition without first obtaining briefing from his appointed counsel, effectively denying him his statutory right to counsel. Despite this error, the *Lewis* court also concluded the deprivation of a petitioner's right to counsel under subdivision (c) of section 1170.95 is state law error only, tested for prejudice under *People v. Watson* (1956) 46 Cal.2d 818.[6] (*Lewis, supra*, 11 Cal.5th at pp. 972-974.) Applying that test, any error in summarily denying a section 1170.95 petition may be harmless unless the petitioner can show " ' "it is reasonably probable that if [they] had been afforded assistance of counsel [their] petition would not have been summarily denied without an evidentiary hearing." ' " (*Lewis, supra*, at p. 974.)

_____

[6] In light of *Lewis*, we reject defendant's contention that the denial of his statutory right to counsel under section 1170.95, subdivision (c), constituted structural constitutional error requiring automatic reversal without any showing of prejudice. As *Lewis* explained, "[t]here is no unconditional state or federal constitutional right to counsel to pursue collateral relief from a judgment of conviction." (*Lewis, supra*, 11 Cal.5th at p. 972.) Thus, "a petitioner is not constitutionally entitled to counsel at the outset of the subdivision (c) stage of the section 1170.95 petitioning process." (*Id.* at p. 973.)

Here, the record of conviction, including this court's prior opinion in *Santana*, unequivocally establishes defendant was the actual killer.[7] According to our prior opinion, "[d]efendant, who was sitting in the backseat, shot the salesman in the back of the head [and] [w]ith Camacho's help, he dumped the body on the side of the freeway." (*Santana, supra*, C060202 [at p. 2].) Defendant admittedly did not petition for rehearing to correct any alleged misstatements of the material facts underlying his convictions. As such, we presume the facts previously stated by this court in *Santana* were "faithful to the appellate record before us and reliably summarized the evidence against defendant." (*People v. Guilford* (2014) 228 Cal.App.4th 651, 661.) The trial court could thus rely on *Santana* in determining defendant was ineligible for relief as the actual killer.

But even if we assume, without deciding, that *Santana*'s factual summary identifying defendant as the actual killer was inadmissible hearsay that was not properly considered during the prima facie review stage, other portions of the record of conviction, in particular the jury instructions and the jury's special circumstance and enhancement findings, show *the jury itself* found defendant actually killed the victim. (*Schabarum v. California Legislature, supra*, 60 Cal.App.4th at p. 1216 [judgment correct on any theory of law will be upheld despite trial court's reasons for reaching judgment].) Based on the jury's determination, defendant was ineligible for relief as a matter of law.

----

[7] The trial court also offered an apparently erroneous alternative basis for denying the petition—that defendant was not convicted of felony murder. The parties agree that the prosecution sought the murder conviction based on a felony-murder theory. "[O]n appeal, we review the decision of the trial court rather than its reasoning and thus '. . . a ruling or decision correct in law will not be disturbed on appeal merely because it was given for the wrong reason. If correct upon any theory of law applicable to the case, the judgment will be sustained regardless of the considerations that moved the lower court to its conclusion.'" (*Schabarum v. California Legislature* (1998) 60 Cal.App.4th 1205, 1216.) Therefore, we do not further address the trial court's reasoning that defendant was convicted as a direct perpetrator rather than for felony murder.

The court instructed the jury that if it found defendant guilty of first degree murder, it then had to decide whether the charged robbery and carjacking special circumstances were true. The jury was partly instructed on the special circumstances as follows: "If you are satisfied beyond a reasonable doubt the defendant actually killed a human being, you need not find the defendant intended to kill in order to find the special circumstance to be true."

The jury found defendant guilty of first degree murder and found the robbery and carjacking special circumstances true. It also found true that defendant personally used a firearm during the offense (§ 12022.53, subd. (b)), but it found not true that defendant had *intentionally* and personally used a firearm causing death (§ 12022.53, subd. (d)). The special circumstance findings, *coupled with* the firearm enhancement findings, show the jury necessarily found that defendant had personally used a firearm to kill the car salesman, but that he did not do so intentionally. Although the true finding on the personal use of a firearm enhancement alone might not have been sufficient to preclude defendant from relief as defendant argues, it is the jury's true finding on that enhancement *plus* the jury's true finding on the robbery and carjacking special circumstances and the not true finding on the intentional and personal discharge causing death enhancement that renders defendant ineligible for relief as a matter of law.

As the actual killer, defendant was not legally eligible for section 1170.95 relief from his murder conviction. (See, e.g., *People v. Cornelius* (2020) 44 Cal.App.5th 54, 58 [the defendant was not entitled to relief as a matter of law because the record of conviction showed the jury found him guilty of second degree murder while personally and intentionally using a firearm to commit the crime; the jury's implicit determination that the defendant was the actual killer barred him from relief under § 1170.95], review granted Mar. 18, 2020, S260410, and held for *Lewis*; review dismissed Oct. 27, 2021, and opinion deemed noncitable and nonprecedential "to the extent it is inconsistent with" the Supreme Court's decision in *Lewis*.) Thus, defendant cannot show a reasonable

10

probability that the outcome of the proceeding would have been any different had the trial court obtained briefing from defense counsel before summarily denying the petition.

## DISPOSITION

The order denying defendant's section 1170.95 petition is affirmed.


              /s/
RAYE, P. J.


We concur:


              /s/
ROBIE, J.


              /s/
HOCH, J.


11